# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-03253-WJM-MEH

ALTITUDE SPORTS & ENTERTAINMENT, LLC,

          Plaintiff,

v.

COMCAST CORPORATION and
COMCAST CABLE COMMUNICATIONS, LLC,

          Defendants.

## PLAINTIFF'S MOTION FOR ORDER PERMITTING DISCLOSURE TO INDUSTRY EXPERT OF PROTECTED MATERIAL PRODUCED IN DISCOVERY

**Table of Contents**

Page

TABLE OF AUTHORITIES ................................................................................................. II
STATEMENT OF CONFERRAL .......................................................................................... 1
INTRODUCTION ................................................................................................................... 2
FACTUAL BACKGROUND .................................................................................................. 3
    A.    Altitude's Industry Expert, Edwin S. Desser ............................................................. 4
    B.    The Parties' Meet-and-Confer Efforts ...................................................................... 5
    C.    The Parties' Impasse ................................................................................................. 8
LEGAL STANDARD ........................................................................................................... 10
ARGUMENT ......................................................................................................................... 10
    A.    Altitude Has a Strong Interest in Providing Mr. Desser Access to Discovery. .... 10
    B.    Comcast's Interests Are Sufficiently Addressed With Existing Protections. ........ 12
        1.    The "Risks" that Comcast Identifies Are Speculative and Legally Insufficient ................................................................................................. 12
        2.    Comcast's Interests Are Sufficiently Addressed by the Protective Order. ..................................................................................................... 14
CONCLUSION ...................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Advanced Semiconductor Materials Am. Inc.* v. *Applied Materials Inc.*,
　No. 95-20169 RMW (EAI), 1996 WL 908654 (N.D. Cal. Oct. 28, 1996) ..................10, 13, 14

*AGA Med. Corp.* v. *W.L. Gore & Assoc., Inc.*,
　No. 10-3734, 2011 WL 13135783 (D. Minn. Dec. 13, 2011) ...............................11, 12, 13, 14

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
　No. 10-cv-04496, 2012 WL 13098456 (E.D.N.Y. Nov. 16, 2012) ...................................11, 13

*BIAX Corp.* v. *Brother Int'l Corp.*,
　No. 10-cv-03013, 2011 WL 5240403 (D. Colo. Nov. 1, 2011)...................................10, 12, 14

*Laumann* v. *Nat'l Hockey League*,
　No. 12-civ-1817, 2013 WL 5310107 (S.D.N.Y. Sept. 12, 2013) ..................................2, 10, 15

*MariCal Inc.* v. *Cooke Aquaculture Inc.*,
　No. 14-cv-00366, 2018 WL 6304403 (D. Me. Dec. 3, 2018)..............................................12, 14

*Nelson* v. *Frana Cos., Inc.*,
　No. 13-cv-2219, 2014 WL 12756162 (D. Minn. Dec. 5, 2014) ...............................................13

*O'Bannon* v. *Nat'l Coll. Athletic Ass'n*,
　7 F. Supp. 3d 955 (N.D. Cal. 2014) ...........................................................................................4

*Streck, Inc.* v. *Diagnostic Sys., Inc.*,
　No. 06-cv-458, 2008 WL 8098467 (D. Neb. Feb. 26, 2008)..............................................12, 13

*Telular Corp.* v. *Vox2, Inc.*,
　No. 00 C 6144, 2001 WL 641188 (N.D. Ill. June 4, 2001) ............................................ passim

**OTHER AUTHORITIES**

DESSER MEDIA, INC/DESSER SPORTS MEDIA, ED DESSER BIOGRAPHY & HISTORY
　OF DESSER MEDIA, INC./DESSER SPORTS MEDIA (2020),
　https://bit.ly/39zSGG2; ............................................................................................................4

*Ed Desser*, DESSER MEDIA, INC.,
　http://www.desser.tv/eddesser .................................................................................................4

Fed. R. Civ. P. 26(c) ........................................................................................................................10

Pursuant to the Protective Order entered in this case (ECF No. 60), Plaintiff Altitude Sports & Entertainment, LLC ("Altitude" or "Plaintiff") moves the Court for an order permitting Altitude to disclose to its industry expert, Mr. Edwin Desser, information produced and designated Confidential and Highly Confidential—Attorneys Eyes' Only (collectively, "Protected Material") by Defendants Comcast Corporation and Comcast Cable Communications, LLC (together, "Comcast" or "Defendants"), subject to Mr. Desser's execution of Exhibit A to the Protective Order, whereby he agrees to be bound to the terms of the Protective Order.

In the alternative, Altitude requests that the Court permit Altitude to disclose Protected Material to Mr. Desser on terms that are similar to those to which Comcast previously agreed in an arbitration in which Comcast, through its affiliate NBCUniversal, retained Mr. Desser (the "NBC-MVPD Arbitration"). Under those terms, Mr. Desser: (1) would abide by the Protective Order; (2) for the period extending from the date of disclosure until one year after the earlier of (i) the date expert discovery closes in this action or (ii) the date this matter is resolved, would not work for any regional sports network in connection with securing distribution by Defendants or their affiliates, nor would he work for any party in connection with any agreement for the distribution of regional sports programming owned by Defendants or their affiliates; and (3) for one year after executing his agreement to be bound by the Protective Order, would not work on any negotiation for regional sports programming or distribution rights where Defendants or their affiliates also are interested in acquiring the relevant rights. In support of this motion, Altitude states as follows:

## Statement of Conferral

Pursuant to D.C.COLO.LCivR 7.1, counsel for Altitude conferred by phone with counsel for Comcast on February 12, 2021, March 10, 2021, March 25, 2021, and April 2, 2021 regarding the requested relief. Comcast opposes the relief, and seeks to impose unreasonable

1

restrictions on both Altitude and Mr. Desser.

## Introduction

This motion presents the question of whether Comcast can hamstring Altitude's ability to use the expert of its choice in this litigation, on the speculative theory that the expert might—at some unspecified future time, in connection with some unspecified future work on behalf of unspecified counterparties, competitors, or potential competitors of Comcast or its affiliates—use or disclose Comcast's confidential information already subject to significant confidentiality, use and disclosure restrictions under the operative Protective Order in this case. The near-unanimous weight of authority dictates that the answer is "no."

Altitude has retained Mr. Edwin Desser, an expert with substantial experience in the field of sports media rights and distribution. Comcast seeks to prevent Altitude from disclosing Protected Material to Mr. Desser. Mr. Desser is not currently consulting on behalf of any competitor of Comcast, nor any negotiating counterparty of Comcast. Yet, Comcast speculates that he <u>might</u> at some future time accept such work, and use information from this case against Comcast at that time. Comcast thus seeks to deny Mr. Desser access to Protected Material unless he agrees to an onerous "cooling off" period, during which he would be required to decline a broad swath of work for sports networks, leagues, teams, or distributors that do business with Comcast or its affiliates—a broad portion of the industry, given Comcast's nationwide presence.

The law is clear that this attenuated, conclusory theory of potential harm cannot justify the severe restrictions that Comcast proposes. In another case, Comcast has objected to (and a court has rejected) conditions materially similar to those that it seeks to impose on Altitude and Mr. Desser here. *Laumann* v. *Nat'l Hockey League*, No. 12-civ-1817, 2013 WL 5310107, at *2–4 (S.D.N.Y. Sept. 12, 2013). In a transparent effort to preclude Altitude from the benefit of an industry expert, Comcast has refused to agree to a "cooling off" period similar to one that

2

Comcast previously agreed to in the NBC-MVPD Arbitration. *See* Ex. 3, at 5–6, 16–17; Ex. 6.[1]

## Factual Background

### A. The Protective Order

The Protective Order requires the party retaining the Industry Expert (the "Receiving Party," per the Protective Order) to follow certain procedures before disclosing Protected Material produced by another party to that Industry Expert. ECF No. 60, ¶ 7.4. The Receiving Party must make a written request to the party that produced the Protected Material (the "Designating Party") providing certain details, including a list of entities "from whom the Industry Expert has received compensation for professional services in the industries and markets pertinent to the litigation at any time during the preceding five years" and basic information about those engagements. *Id.* If the Designating Party objects, the parties are to meet and confer. *Id.* If they do not reach agreement, the party wishing to disclose Protected Material "may file a motion seeking permission from the Court to do so." *Id.*

The Protective Order strictly limits the ways in which Protected Material can be used or disclosed by Industry Experts. They may use Protected Material produced by adverse parties or third parties "<u>only</u> for the preparation and trial of this case." *Id.* ¶ 7.1 (emphasis added). They must return or destroy all Protected Material within 60 days after the final disposition of the case and provide written certification of compliance with that requirement, *id.* ¶ 13. Even after the case concludes, "the confidentiality obligations imposed by this Order shall remain in effect until the Designating Party agrees otherwise in writing or a court order otherwise directs." *Id.* ¶ 4.

Before receiving access to Protected Material, Industry Experts must sign an agreement to be bound. *Id.* ¶ 7.3(b) (the "Acknowledgment"). The Acknowledgment requires the expert to

---

[1] All "Ex." citations refer to the Declaration of Amanda J. Sterling in Support of Altitude's Motion for Order Permitting Disclosure to Industry Expert of Protected Material Produced in Discovery ("Sterling Decl.").

3

certify, under penalty of perjury, his agreement "to comply with and to be bound by all the terms of the Protective Order," and to "not disclose in any manner any information or item that is subject to the Protective Order to any person or entity except in strict compliance with the provisions of the Protective Order." *Id.* at Ex. A. The expert must acknowledge that failure to comply would subject him to "sanctions and punishment in the nature of contempt." *Id.*

### A. Altitude's Industry Expert, Edwin S. Desser

Mr. Desser is the President of Desser Media/Sports Media, Inc. ("Desser Media"), a consulting firm that advises sports and media organizations on media rights, mergers and acquisitions, litigation, arbitration, and strategic business development.[2] Mr. Desser founded Desser Media in 2005, over fifteen years ago. *See* Ex. 1, at 5. Prior to founding Desser Media, Mr. Desser worked for the National Basketball Association ("NBA") in multiple roles, including President of NBA Television. *Id.* In his current role, Mr. Desser has worked on matters that include media rights valuation, negotiations, and business planning for sports teams such as the Calgary Flames hockey team and the Los Angeles Lakers of the NBA. *Id.* at 2–3, 5. He has also consulted with the Minnesota Timberwolves on sports media rights valuation, and conducted sports media consulting services for other entities. *Id.* He has experience in antitrust, contract, securities and regulatory matters, and valuations. He has also served as an expert in more than a dozen litigations and other disputes related to sports media rights, including the landmark *O'Bannon* v. *NCAA* litigation, where he testified regarding the value of college athletes' name, image, and likeness rights in media and entertainment deals. *O'Bannon* v. *Nat'l Coll. Athletic Ass'n*, 7 F. Supp. 3d 955, 969 (N.D. Cal. 2014).

---

[2] *See Ed Desser*, DESSER MEDIA, INC., http://www.desser.tv/eddesser (last accessed Apr. 19, 2021, 7:34 PM); DESSER MEDIA, INC/DESSER SPORTS MEDIA, ED DESSER BIOGRAPHY & HISTORY OF DESSER MEDIA, INC./DESSER SPORTS MEDIA (2020), https://bit.ly/39zSGG2; *see also* Ex. 1, at 4–5.

Accordingly, Mr. Desser has significant expertise in sports rights and distribution agreements and industry-wide standard terms of such agreements, the value of sports rights, and industry-wide practices relating to negotiations between networks and distributors, all issues central to this case. He will draw on this expertise to assist Altitude's counsel, the court, and a jury understand the evidence, particularly industry-specific evidence found in Protected Material.

### B. The Parties' Meet-and-Confer Efforts

On February 1, 2021, Altitude disclosed Mr. Desser to counsel for Comcast as an Industry Expert with whom it wished to share Protected Material in accordance with Paragraph 7.4. Ex. 1, at 2–3; *see* ECF No. 60, ¶ 7.4. Comcast objected to Altitude's proposed disclosure on the grounds that it could suffer "irreparable harm" if Mr. Desser "misused" its confidential information "to advise counterparties, competitors, or potential counterparties or competitors of Comcast or NBCUniversal."[3] Ex. 2, at 5–6. In a letter noting its objection, Comcast requested that Mr. Desser "agree to a three-year cooling off period following the end of this litigation for any work that is adverse to Comcast, NBCUniversal, and their affiliates." *Id*. at 7.

Although no protections beyond those set forth in the Protective Order are needed, Altitude sought to meet and confer in an effort to resolve Comcast's objection without court intervention. Altitude advised that Comcast's proposed three-year period was unacceptable, and the parties discussed whether Mr. Desser would agree to a cooling-off provision similar to the one that had governed Mr. Desser's work in the NBC-MVPD Arbitration. Ex. 3, at 18–20. Altitude anticipated that this would be a reasonable compromise because this had been a provision that Comcast, through its affiliate, voluntarily agreed to for Mr. Desser specifically. Accordingly, Altitude confirmed that Mr. Desser would agree to the same restrictions that

---

[3] Comcast also objected on the separate ground that Mr. Desser had worked for an affiliate on the NBC-MVPD Arbitration. Ex. 2, at 6. The parties resolved this objection, so it is not a subject of this motion. Ex. 3, at 2–3.

appeared in the NBC-MVPD Arbitration provision (the "NBC-MVPD Provision"), but before committing to those terms, Altitude asked Comcast to provide the text of the provision, which it had not previously disclosed to Altitude. *Id.*

Comcast provided Altitude with the text of the NBC-MVPD Provision, as requested. The provision states, in relevant part:

> If Highly Confidential Information is disclosed to an Outside Expert, for the period extending from **the date of the disclosure until one year after the Outside Experts signs and files a Declaration,** such Outside Expert will not work for any regional sports network in connection with securing distribution on any of the Parties' systems; nor, for such period, shall such Outside Expert work for any party (i) in connection with any agreement for the distribution by an multichannel video programming distributor ("MVPD") or online video distributor ("OVD") of programming owned by a Protected Third Party; or (ii) in connection with a negotiation for acquisition of programming or distribution rights in situations where a Protected Third Party also is interested in acquiring or selling the relevant programming (regardless of whether the Protected Third Party previously had any rights to carry or license such programming).

*Id.* at 17–18 (emphasis added).

When it sent the language to Altitude, notwithstanding the parties' prior discussion, Comcast claimed that the provision it had previously agreed to was insufficient. Instead, it proposed much more onerous terms by which, for a period extending until <u>one year after this case concludes</u>, Mr. Desser would not work: (1) on behalf of "any national or regional sports network" on matters "in connection with securing distribution by Defendants or their affiliates" (a "Distribution Agreement Restriction"); (2) on behalf of any person on matters "in connection with a negotiation for acquisition or licensing of sports media rights by Defendants or their affiliates" (a "Comcast/NBC Sports Rights Agreement Restriction"); or (3) on behalf of any person on matters "in connection with a negotiation for the acquisition or licensing of sports media rights in situations where Defendants or their affiliates also are interested in acquiring the relevant rights" (an "Other Sports Rights Agreement Restriction"). *Id.* at 16–18. Comcast also

6

insisted that until <u>three</u> years after this case concludes, Mr. Desser would not accept work for any entity "adverse to" Comcast or its affiliates on any matter "concerning the carriage of programming by" Comcast or its affiliates (a "Catch-All Restriction"). *Id.*

Altitude rejected this draconian counterproposal, and urged Comcast to negotiate a compromise modeled on the NBC-MVPD Provision. Altitude proposed that for a full year after signing the Acknowledgment, Mr. Desser would agree to Distribution Agreement Restrictions applicable to regional sports programming, which for the duration of the cooling-off period would require him to decline work on behalf of (i) regional sports networks in connection with securing distribution by Comcast or its affiliates, or (ii) any party in connection with any agreement for the distribution of regional sports programming owned by Comcast or its affiliates. *Id.* at 12–15.

Comcast rejected this proposal, again asserting, without explanation, that the NBC-MVPD Provision was insufficient for purposes of this case. *Id.* at 10–12. Comcast instead provided a counterproposal that was similar to its first, except that it omitted the Catch-All Restriction and substituted for the Comcast/NBC Sports Rights Agreement Restriction a restriction prohibiting Mr. Desser from working on agreements for distribution of regional or national sports programming owned by Comcast or its affiliates. *Id.* Comcast's counterproposal extended the applicable date for all three of the restrictions to <u>two years</u> after the close of expert discovery.[4]

Altitude explained that it could not accept Comcast's proposal for the same reasons that Comcast's first proposal did not work—it significantly threatened Mr. Desser's livelihood. Yet in a final effort to compromise before seeking court intervention, Altitude offered to extend the

---

[4] Under the current case schedule, expert discovery closes December 17, 2021, meaning that Comcast's proposed restrictions would bind Mr. Desser until December 2023. ECF No. 97, at 9. These terms would be in addition to Mr. Desser's agreement to be bound by the Protective Order and all of its restrictions. Ex. 3, at 10–12.

7

restrictions it previously proposed to a period of one year after expert discovery closes or the case concludes (whichever is earlier). *Id.* at 6–7; Sterling Decl. ¶ 14. Altitude additionally offered an Other Sports Rights Agreement Restriction related to regional sports programming for a period ending one year after Mr. Desser signed the Acknowledgment. Ex. 3, at 6–7.

Altitude's final proposal is similar to the NBC-MVPD Provision. Both Altitude's proposal and the NBC-MVPD Provision include Distribution Agreement Restrictions applicable to regional sports networks and programming. *Id.* at 6–7, 17–18; Ex. 6. Altitude's proposal would impose these restrictions until one year after the later of the close of expert discovery or the date the matter is resolved, whereas the NBC-MVPD Provision's restrictions expired only one year after Mr. Desser submitted to the protective order in that matter. *See* Ex. 6. Altitude's proposal also includes an Other Sports Rights Agreement Restriction modeled on the one that appears in the NBC-MVPD Provision, but that is specific to regional sports programming and that lasts for the same period of time as the one that appears in the NBC-MVPD Provision. *Id.*

Comcast *again* rejected this compromise and maintained its request that Mr. Desser agree to the three specific restrictions in its prior proposal, to remain in effect until a year after expert discovery closes or the case concludes, whichever date is earlier. Ex. 3, at 2–3.

### C. The Parties' Impasse

Contrary to what Comcast contends, no cooling-off provision of any kind is necessary. Yet, Altitude and Mr. Desser were willing to agree to a Distribution Agreement Restriction that applied to *regional* sports networks, until one year after the close of expert discovery or the conclusion of the case (whichever is earlier). Even though Altitude is a regional sports network and this litigation focuses on Comcast's anticompetitive conduct vis-à-vis regional sports networks, Comcast insists that Mr. Desser be precluded from working on behalf of national

8

networks. Comcast has provided no justification on the law or on the facts for this broad and onerous demand, and the NBC-MVPD Provision likewise focused on regional sports networks.

Comcast also insists that Mr. Desser agree to a Distribution Agreement Restriction that would preclude him from working on agreements for the distribution of regional or national sports programming owned by Comcast or its affiliates. This restriction is nonsensical and burdensome because distribution of national sports programming owned by Comcast or its affiliates is not central to this action. As to this provision, too, Altitude offered a restriction that applied to *regional* sports programming, which is the type of programming at issue in this case.[5]

Lastly, Comcast requests an Other Sports Rights Agreement Restriction for a period that is longer than one year from the date Mr. Desser signed the Acknowledgment. Comcast seeks to preclude Mr. Desser from working on sports rights negotiations if Comcast or its affiliates might also have an "interest[]" in the rights, even though Mr. Desser has no practical means of knowing which rights Comcast may be interested in. Even still, Mr. Desser agreed to accept a one-year restriction mirroring that in the NBC-MVPD Provision, related to regional sports programming, which Comcast has rejected.

For all of the requested restrictions outlined above, Comcast points to the same unfounded concerns. It contends that giving Mr. Desser access to Protected Material would somehow harm Comcast because, even though he is not currently working for any counterparty or competitor of Comcast, he might do so in the future. And in such future, hypothetical matters, he could review Protected Material or draw upon sensitive details he committed to memory. But this concern would apply to any expert actively working in the industry, given that any such

---

[5] The NBC-MVPD Provision is silent as to types of programming; it merely references agreements for distribution of programming that is "owned by a Protected Third Party." *See* Ex. 6. Altitude's proposal omitted such opaque defined terms in favor of clear, specific language tailoring the restriction to regional sports programming. *Id.*

expert ostensibly would have similar opportunity and incentives to misuse sensitive information.

## Legal Standard

When a party has produced documents under a protective order and opposes disclosure to an adversary's expert, the court balances the interests of the parties in order to determine whether the protections sought by the objecting party are justified.  The party seeking to preclude the expert's access to protected materials has the burden of proving that the restrictions it seeks are warranted.  *Advanced Semiconductor Materials Am. Inc*. v. *Applied Materials Inc*., No. 95-20169 RMW (EAI), 1996 WL 908654, at *3 (N.D. Cal. Oct. 28, 1996); *see also BIAX Corp.* v. *Brother Int'l Corp.*, No. 10-cv-03013, 2011 WL 5240403, at *2–3 (D. Colo. Nov. 1, 2011).

The court weighs the receiving party's "strong interest in selecting an appropriate expert" against the producing party's "interest in protecting confidential information."  *BIAX Corp.*, 2011 WL 5240403, at *3; *Telular Corp.* v. *Vox2, Inc.*, No. 00 C 6144, 2001 WL 641188, at *2–3 (N.D. Ill. June 4, 2001).  Where there are no "compelling reasons urging the contrary," and where a case involves a complex subject matter, a party "must be permitted to present" its choice of expert, and the expert "must be permitted access to" the information.  *Advanced Semiconductor Materials*, 1996 WL 908654, at *3.  This test is interchangeable with the "good cause" inquiry under Rule 26(c).  *Id.*; *Laumann*, 2013 WL 5310107, at *2; *see* Fed. R. Civ. P 26(c).  In sum, the inquiry is whether the restrictions sought by the party opposing disclosure are justified under the circumstances.  *Advanced Semiconductor Materials*, 1996 WL 908654, at *3.

## Argument

### A. Altitude Has a Strong Interest in Providing Mr. Desser Access to Discovery.

Altitude's interest in providing Mr. Desser with access to Protected Material is particularly strong given that this case involves a complicated industry, in which business and operational decisions by distributors and their partners may be informed by nuances that only a

knowledgeable expert will understand and be able to explain to a jury. *Id.*; *see also In re Am. Express Anti-Steering Rules Antitrust Litig. (No. II)*, No. 10-cv-04496, 2012 WL 13098456, at *2 (E.D.N.Y. Nov. 16, 2012). Mr. Desser will inform Altitude's counsel's understanding of the terms and operation of distribution agreements and sports rights agreements, the standard terms of such agreements, industry-wide practices, and the value of Altitude's programming to Comcast. He also will assist Altitude's counsel in understanding how these concepts are addressed and discussed in Comcast's own documents, and in navigating discovery on these issues. These topics are relevant to core issues essential to Altitude's claims, including, but not limited to, whether Comcast's agreements and relationships signal attempts at monopolization. They also will bear on the proper definition of the relevant markets, and on damages issues.

The law is clear that Altitude need not show that no other expert will do; an expert need not be "uniquely qualified" for the party to prevail under the balancing test. *Telular Corp.*, 2001 WL 641188, at *3. And Mr. Desser is exceptionally well qualified to assist Altitude's counsel in this litigation based on his expertise in the industry and experience as an expert and consultant.

The restrictions that Comcast has proposed as a condition for the withdrawal of its objection would prejudice Altitude by disincentivizing Mr. Desser from working with Altitude. *AGA Med. Corp.* v. *W.L. Gore & Assoc., Inc.*, No. 10-3734, 2011 WL 13135783, at *13 (D. Minn. Dec. 13, 2011) (conditions burdening an expert's ability to accept other work are contrary to the interests of the party that wishes to consult with that expert). Comcast essentially wants Mr. Desser to forfeit the right to take on matters at the heart of his business for nearly two years. While Mr. Desser is not currently working with any counterparties of Comcast or its affiliates, their omnipresence within the industry and the sweeping nature of the proposed restrictions would place Mr. Desser's livelihood in serious potential jeopardy.

11

Courts have recognized that such draconian restrictions are improper. In *BIAX Corp.*, a court in this District rejected efforts by the producing party (HP) to restrict the plaintiff's expert from viewing HP's source code unless he agreed to terms similar to those that Comcast requested. 2011 WL 5240403, at *2. In rejecting HP's requested restrictions, the court observed that "the breadth and scope of these proposed 'assurances' is stunning" and concluded that they were inappropriate for many reasons, including "the law's general preference against such restrictions" and the fact that they would operate to "deprive a party of its chosen expert" and "seriously limit the available pool of expert witnesses." *Id.* at *3; *see also AGA Med.*, 2011 WL 13135783, at *13 (restrictions de-incentivize experts from accepting work, and "dramatically increase the costs for any party to retain an expert"). These considerations apply equally here.

### B. Comcast's Interests Are Sufficiently Addressed With Existing Protections.

Comcast's asserted confidentiality interests do not justify its proposed restrictions.

#### 1. The "Risks" that Comcast Identifies Are Speculative and Legally Insufficient

Comcast must "'present evidence of specific damage likely to result'" from disclosure, using more than "'conclusory statements'" to explain why existing protections are insufficient. *Streck, Inc.* v. *Diagnostic Sys., Inc.*, No. 06-cv-458, 2008 WL 8098467, at *4 (D. Neb. Feb. 26, 2008) (quoting *BASF Corp.* v. *United States*, 321 F. Supp. 2d 1373, 1379 (C.I.T. 2004)); *MariCal Inc.* v. *Cooke Aquaculture Inc.*, No. 14-cv-00366, 2018 WL 6304403, at *1 (D. Me. Dec. 3, 2018). In particular, it must show that given the specific nature and timing of Mr. Desser's work, there is a real, concrete risk of competitive harm sufficient to justify additional restrictions. *Telular Corp.*, 2001 WL 641188, at *1–3; *BIAX Corp.*, 2011 WL 5240403, at *2–3.

Comcast contends that the proposed restrictions are justified because of the threat that Mr. Desser could misuse Protected Material "to advise counterparties, competitors, or potential counterparties or competitors." Ex. 2, at 5–6. But Mr. Desser is not currently working with any

12

actual or potential competitors of Comcast, and engagements on behalf of competitors have made up only a tiny fragment of his recent work, *see* Ex. 1, at 2–3.  Instead, as Comcast has emphasized to Altitude, its chief concern relates to the possibility that Mr. Desser will work for a counterparty of Comcast or an affiliate in the future.  Ex. 3, at 2, 16; Ex. 2, at 6.

This distinction should be fatal to Comcast's arguments. Where a party seeks to restrict disclosure to an expert based on competitive concerns, the inquiry focuses first and foremost on the interests a party may have in protecting information "from disclosure to its competitors." *Telular Corp.*, 2001 WL 641188, at *1 (emphasis added); *see also Advanced Semiconductor*, 1996 WL 908654, at *3.  Restrictions may be warranted under narrow circumstances when, for example, an expert is actively working with a party's direct competitor on matters relevant to the case. *Streck, Inc.*, 2008 WL 8098467, at *3–4.  But "a party on the opposite side of a negotiating table is not a competitor," and does not present the same threat that information will be misused. *Nelson* v. *Frana Cos., Inc.*, No. 13-cv-2219, 2014 WL 12756162, at *1 (D. Minn. Dec. 5, 2014).  Courts accordingly have weighed parties' interests in protecting commercially sensitive information differently in cases involving competitors and counterparties.  *See In re Am. Express*, 2012 WL 13098456, at *2 (declining to restrict disclosure to expert based on possibility that expert would misuse the defendant's information "in hypothetical merchant negotiations" in the future); *Telular Corp.*, 2001 WL 641188, at *3 (no additional restrictions warranted where expert worked with recent contractual partner, as company was "not a competitor").

Comcast's asserted risk of harm is hypothetical and facially insufficient to justify the limitations Comcast has demanded.  *Streck, Inc.*, 2008 WL 8098467, at *4; *AGA Med. Corp.*, 2011 WL 13135783, at *13.  Moreover, the threat Comcast relies upon is not individual to Mr. Desser, but would apply on the same terms to any expert actively working in the industry.

*Accord AGA Med.*, 2011 WL 13135783, at *13 (rejecting requests for restrictions based on asserted risks that would apply to all experts); *MariCal Inc.*, 2018 WL 6304403, at *2 ("Expert witnesses in most, if not all, commercial cases are likely working, either directly or indirectly, in the industry at issue. . . . The Court is not persuaded that disclosure of the information to Dr. Hardy presents an increased risk of inadvertent disclosure of the information."). These vague concerns cannot outweigh Altitude's interests here. *BIAX Corp.*, 2011 WL 5240403, at *2–3.

### 2. Comcast's Interests Are Sufficiently Addressed by the Protective Order.

Mr. Desser has agreed to the Acknowledgment and therefore is bound by the Protective Order. Even were he to accept the work that Comcast purports to be concerned about, he would be prohibited on pain of sanctions from using the information he learned in this case. *Id.* ¶ 13.

Comcast concedes that Mr. Desser is bound to these restrictions, but contends he could commit to memory Protected Material that he could misuse in a (hypothetical, unknown) future engagement. Comcast also suggested that Mr. Desser may fail to fully appreciate the gravity of his ethical and contractual obligations because he is not an officer of the court. Sterling Decl. ¶ 11. But as courts confronting this precise situation have recognized, a "risk of inadvertent disclosure" is "likely present in most every case," because industry experts, by definition, "are likely working, either directly or indirectly, in the industry at issue." *MariCal Inc.*, 2018 WL 6304403, at *2; *Advanced Semiconductor*, 1996 WL 908654, at *3 (fear that expert "will innocently misuse" information he cannot unlearn, "without more, is not sufficient to substantiate a risk of competitive injury" outweighing other party's interest in obtaining services from expert of choice); *Telular Corp.*, 2001 WL 641188, at *2 (dismissing such arguments as "unpersuasive"); *AGA Med.*, 2011 WL 13135783, at *13 (rejecting as "unsubstantiated" arguments based on party's "conviction that if in the future [the expert] was retained by a competitor, she would inadvertently use this [protected] information because it is in her head").

14

Courts also have squarely rejected the notion that experts should be subject to special restrictions because they are less conscientious. *Laumann*, 2013 WL 5310107, at *4 (rejecting this contention in case involving Comcast, describing it as "condescending rhetoric," "unjustified," and "not a proper basis for exclusion" from working on future disputes). Those arguments are equally unpersuasive here, and cannot support Comcast's proposed restrictions.

## Conclusion

The Court should grant Altitude's motion permitting disclosure to Mr. Desser of Protected Material produced by Comcast in this litigation.

April 20, 2021

/s/ *William A. Isaacson*
WILLIAM A. ISAACSON
(wisaacson@paulweiss.com)
AMY J. MAUSER
(amauser@paulweiss.com)
MARTHA L. GOODMAN
(mgoodman@paulweiss.com)
MELISSA FELDER ZAPPALA
(mzappala@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006
(202) 223-7316 (phone)
(202) 204-7344 (fax)

KEVIN D. EVANS
(kdevans@evanspllc.law)
EVANS LAW PLLC
5613 DTC Parkway, Ste. 850
Greenwood Village, CO 80111
(720) 738-3971 (phone)
(720) 749-4958 (fax)

*Attorneys for Plaintiff Altitude Sports & Entertainment, LLC f/k/a KSE Media Ventures, LLC*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this 20th day of April, 2021, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR ORDER PERMITTING DISCLOSURE TO INDUSTRY EXPERT OF PROTECTED MATERIAL PRODUCED IN DISCOVERY** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

                */s/ William A. Isaacson*